J-S06002-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.A.G, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.G., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1267 WDA 2025 |

Appeal from the Order Entered September 4, 2025
In the Court of Common Pleas of McKean County Orphans' Court at
No(s): 42-25-0045

BEFORE:   KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MAY 11, 2026**

B.G. (Father) appeals from the order entered in the McKean County Court of Common Pleas, which granted the petition of the McKean County Children and Youth Services (the Agency) and involuntarily terminated his parental rights to his now almost four-year-old son, J.A.G. (the Child), pursuant to the Adoption Act.[1]  **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  After review, we affirm.

We discern the following factual and procedural history from the orphans' court's opinion and the certified record.  Mother was involved with the Agency on and off since 2017.  Mother has four older children, the Child's half-siblings, with her previous husband.  Because her previous husband

---

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court also involuntarily terminated the parental rights of A.G. (Mother), who did not appeal.

physically abused some of the older children, they were all adjudicated dependent. When Mother divorced her previous husband, the court terminated supervision over the older children, and they remained with Mother.

In June 2021, Mother and Father married. In May 2022, the Child was born. From approximately July 2021 to July 2022, the Agency received reports that Father had physically abused some of Mother's older children. Father ultimately pleaded guilty to simple assault related to one abuse incident.

In July 2022, the Agency implemented a safety plan under which the Child and his half-siblings were placed with Maternal Grandparents, while the Agency investigated the abuse allegations. However, Father and Mother were not cooperative during the investigation, and Father eventually took the Child back from Maternal Grandparents without permission. At that time, in September 2022, the Agency filed an application for emergency protective custody of the Child, which the court granted. The Child was again placed with Maternal Grandparents, where he and his siblings have remained ever since. In March 2023, the Child was adjudicated dependent.

When the Child was removed from Father's and Mother's care, there were concerns with the condition of the parents' home, the parents' substance abuse, and whether the parents could provide adequate care for the Child, given Father's past abuse of the Child's half-siblings and that Mother did nothing to protect the children.

With the help of the Agency, Father and Mother made progress on some of their goals, including obtaining new housing, attending visits with the Child and his medical appointments, and testing negative for illegal substances. However, concerns remained about the parents' ability to adequately care for the Child. In February 2025, almost two and a half years after the Child was removed, the Agency filed a petition to terminate Father's and Mother's parental rights. The orphans' court held a termination hearing on July 14 and August 7, 2025. At the hearing, the Child was represented by his guardian *ad litem* (GAL) from the dependency proceedings.[2] The Agency presented the

_____

[2] Our Supreme Court has mandated that appellate courts *sua sponte* "verify that the orphans' court indicated that the attorney [in a dual role of GAL and legal counsel] could represent the child's best interests and legal interests without conflict." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020); **see also** 23 Pa.C.S.A. § 2313(a). Counsel representing a child's legal interests must advocate for the child's preferred outcome even if counsel does not agree with it, whereas the GAL representing a child's best interests must express what the GAL "believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees." **In re T.S.**, 192 A.3d 1080, 1082 n.2 (Pa. 2018) (citation omitted).

At the termination hearing, the GAL stated that there was no conflict between the Child's best and legal interests given his age, and the GAL believed the two interests were aligned. **See** N.T., 7/14/25, at 7. The orphans' court asked if there was any objection to the GAL serving in both roles; no one lodged an objection. **Id.** The court stated that since "there is no objection then I'm issuing a finding that [the GAL] can serve both roles." **Id.** In its opinion, the court reiterated that the GAL advised the court that he could represent the Child's best and legal interests, and it found, without objection, that the GAL could represent both. **See** Orphans' Court Opinion, 9/2/25, at 1 n.1. Additionally, the Child was a little over three years old at the termination hearing, and multiple witnesses testified that the Child's speech was delayed,

*(Footnote Continued Next Page)*

testimony of: an Agency intake investigator; an Agency intake caseworker; Dr. von Korff, an expert witness who completed bonding assessments and a psychological consultation for this case; an Agency case aide; Maternal Grandmother; the Child's court appointed special advocate (CASA); and the current Agency caseworker. Father presented the testimony of his former therapist and an employee from the Parents as Teachers program that Father and Mother participated in. Mother did not present any witnesses. Father and Mother did not testify.

At the end of the hearing, the orphans' court took the matter under advisement. A few weeks later, in September 2025, the court entered orders terminating Father's and Mother's parental rights.

Father timely filed this appeal. He raises the following five issues for our review:

> I. Whether the Termination Court erred or committed an abuse of discretion in terminating Father's parental rights under 23 Pa.C.S. §2511(a)(1)?
>
> II. Whether the Termination Court erred or committed an abuse of discretion in terminating Father's parental rights under 23 Pa.C.S. §2511(a)(2)?

---

and he had only recently begun to say more words. *See T.S.*, 192 A.3d at 1088 (recognizing that "where a child is too young to express a preference, it would be appropriate for the GAL to represent the child's best and legal interests simultaneously" (citations omitted)). Given the orphans' court's finding and the Child's age, we determine that the orphans' court fulfilled the mandate of *K.M.G.* and Section 2313(a).

III. Whether the Termination Court erred or committed an abuse of discretion in terminating Father's parental rights under 23 Pa.C.S. §2511(a)(5)?

IV. Whether the Termination Court erred or committed an abuse of discretion in terminating Father's parental rights under 23 Pa.C.S. §2511(a)(8)?[3]

V. Whether the Termination Court erred and abused its discretion by granting the Agency's Petition for Termination of Parental Rights as the evidence did not support the finding that Termination of Father's parental rights would support [the] developmental, physical, and emotional needs and welfare of Child?

Father's Brief at 4-5 (orphans' court's answers omitted).

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are

_____

[3] We observe that the first four issues listed in Father's brief do not directly match the errors listed in his Appellate Rule 1925(b) statement. In his brief, Father formulated the issues by listing the citations for the Section 2511(a) subsections that he is challenging. Conversely, in his concise statement, Father did not list any citations for the subsections but instead utilized some of the statutory language for (a)(1), (2), and (5). However, for the issue in his concise statement that corresponds to (a)(8), Father did not utilize all of the statutory language; he only stated that "the evidence did not support the finding that termination of Father's rights would best serve the needs of the Child." Father's Concise Statement of Errors Complained of on Appeal, 10/1/25. Although this encompasses the third prong of (a)(8), it does not address the first two prongs. Similarly, Father did not include the statutory language for the first two prongs of (a)(5) and included only the language for the last three prongs. *See id.* Thus, we would arguably have cause to find that Father waived his argument for some of these subsections. *See* Pa.R.A.P. 1925(b)(4)(vii). However, Father's overall concise statement indicates that he intended to challenge the orphans' court's termination on all grounds, the orphans' court's 1925(a) statement referred this Court to its original opinion which addressed all the Section 2511(a) subsections, and Father argued all the subsections in his brief. Therefore, we decline to elevate form over substance and do not find waiver in this instance.

> supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267. Furthermore, the "trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in

- 6 -

the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

***In re C.M.K.***, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); ***see also Interest of M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Father's parental rights under Section 2511(a)(1), (2), (5), (8), and (b). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(8). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

To prove this subsection, the Agency must establish the following three elements: "(1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child." *M.E.*, 283 A.3d at 832 (citation omitted). Unlike other Section 2511(a) subsections, subsection (a)(8) "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the" child's placement. *Id.* (citation omitted). Instead, the relevant inquiry "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *Id.* (citation omitted).

Importantly, under this subsection, "the court shall not consider any efforts by the parent to remedy the conditions described [in the termination petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). This provision may seem harsh as it prohibits the court from considering the parent's recent progress. However, as this Court has explained:

> [B]y allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [eighteen] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*M.E.*, 283 A.3d at 832 (citation omitted).

Finally, although Section 2511(a) focuses generally on the parent's behavior, the third element of subsection (a)(8) centers on the child's needs, thereby encompassing the needs and welfare analysis typically reserved until the court's Section 2511(b) analysis. This Court has explained:

> [W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re E.J.C.*, 335 A.3d 1222, 1231 (Pa. Super. 2025) (citing *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*)).

Here, the orphans' court determined that the Agency had proven the statutory grounds for termination under Section 2511(a)(8). The court explained its reasoning as follows:

> We incorporate the findings for § 2511(a)(1), (2) and (5) above herein. The Child has been in the custody of [the Agency] and placed with Maternal Grandparents for almost

3 years. The conditions that led to the initial placement, Father's likelihood to physically abuse the Child if he is returned to Parents' care; Mother's inability to protect the Child if he is returned to Parents' care; and, Parents exposing the [older] children to pornography and sexual activity and other dangerous and harmful situations, remain. The Child is very and productively bonded with Maternal Grandparents. He recognizes them as parents and they have and will continue to provide him with a loving, stable and supportive home. Maternal Grandparents will adopt the Child if that is an option. If the Child is adopted, it is very likely that Maternal Grandparents will foster an ongoing, but protective, relationship and contact between him and Mother. Therefore, it is the Child's best interest for parental rights to be terminated; and, [the Agency] has presented clear and convincing evidence for the termination of parental rights as required by § 2511(a)(8).

Orphans' Court's Opinion (O.C.O.), 9/2/25, at 22 (the Child's and Maternal

Grandparents' names removed).

Further, in its Appellate Rule 1925(a) statement, the court noted:

In addition, there is a development following the September 2, 2025 termination order that has additional bearing. Father has filed an appeal of the termination of his parental rights and Mother has not. As set forth in the Opinion, we found that: Father is prone to extreme anger which he is unable to control; he acts out in anger including verbally and physically; and, he has acted out in anger on his step children which resulted in criminal convictions. Although we found that Mother is dominated by Father and would not report Father's physical and verbal aggression against the Child, she is now, legally, out of the picture. Therefore, if Father's parental rights were not terminated, the Child faces the possibility of being returned to his Father's care and Father abusing him and no one at all monitoring or discovering it. In addition, we found that, although Mother and Father remain married and residing together, Father has shown great hostility towards Maternal Grandparents, . . . whom [the Child] has resided with for 3 years. There is no doubt that, if the Child was in Father's care, he would not allow him to have any contact or a

- 10 -

relationship with Maternal Grandparents. Mother no longer has any parental rights and would be unable, even if she chose to, to allow the Child to have even limited contact with Maternal Grandparents. The parental rights of Mother's [] older children, the Child's half-siblings who Father physically assaulted, are also in Maternal Grandparent's care. The Child is very bonded with Maternal Grandparents and his older half siblings. Therefore, if Father's parental rights are not terminated and he is returned to Father's custody, it would result in the Child being completely separated from Maternal Grandparents and his half siblings, the strong, loving and productive bond he has with his Maternal Grandparents and half siblings being severed and extreme emotional and life lasting harm to the Child.

Orphans' Court's 1925(a) Statement, 10/16/25, at 1-2 (the Child's and Maternal Grandparents' names removed).

On appeal, Father does not dispute that the Child has been removed from his care for at least twelve months, which satisfies the first prong of Section 2511(a)(8). *See* Father's Brief at 29. However, Father argues that the conditions which led to the Child's removal no longer exist. *Id.*

According to Father, the orphans' court acknowledged that many of the original conditions that led to the Child's removal, including the parents' inadequate housing and drug use, had been resolved. *Id.* Further, the additional condition of Father's inappropriate discipline of children no longer exists because Father has addressed that issue through counseling and engagement in programs. *Id.* at 29-30. Father states that he completed anger management treatment and was successfully discharged. *Id.* at 30. Additionally, the Parents as Teachers program employee testified that she no

- 11 -

longer believed that Father's view on discipline was a barrier to his progress. *Id.* (citation omitted).

Father fails to appreciate the standard of review we must apply in termination cases. The crux of his argument is that the orphans' court erred by terminating his rights because Father's two witnesses testified in his favor and indicated that his anger management was no longer a problem. However, this argument fails to acknowledge the contrary testimony that suggested Father's anger was still a barrier to reunification. It also fails to acknowledge that the orphans' court accepted the testimony and conclusions of the Agency's witnesses over Father's witnesses. As noted above, we must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Although Father does not dispute the first element of (a)(8), we confirm that the Child was removed from Father's care for more than twelve months. The Child initially began living with Maternal Grandparents in July 2022 pursuant to the Agency's safety plan and then was permanently placed there in September 2022 when the Agency received emergency protective custody of him. The Agency filed its termination petition in February 2025, and the termination hearing occurred in July and August 2025. Thus, more than twelve months had elapsed since the Child's removal.

As noted above, one condition leading to the Child's removal was the parents' ability to adequately care for the Child. Namely, there were concerns about Father's abuse of the Child's half-siblings, and Mother's failure to protect them. Because of Father's and Mother's history, the Agency and court were concerned that Father would similarly abuse the Child, if he was returned to Father's and Mother's care. As of the termination hearing, the parents' ability to adequately care for the Child was the "central and critical issue regarding termination." O.C.O. at 2.

Although Father argues that he fixed this condition by successfully completing anger management treatment, the orphans' court disagreed. Dr. von Korff authored a report and testified on the Agency's behalf, after evaluating the parents, Maternal Grandparents, and the Child. Dr. von Korff opined that neither parent recognized "a need for further personal change or improvement, for counseling support and guidance, or for self-reflection." *Id.* at 5 (citation omitted). Father blamed others for the Child not being in his care. *See id.* (citation omitted); N.T., 7/14/25, at 40-41, 46, 82-83. Dr. von Korff found that Father likely had "a controlling and insensitive approach to parenting." *See* O.C.O. at 5 (citation omitted); N.T., 7/14/25, at 83-84. The court found Dr. von Korff's opinions and testimony to be accurate and reached the same conclusion. O.C.O. at 5. The court stated that Father is a "very angry individual and quick to react physically. His negative and aggressive attitude existed when he assaulted the Child's older siblings previously, it

existed when the older children and the Child was removed from his care, it exists now with no change and will exist in the future." *Id.* at 6 (the Child's name removed).

Further, Dr. von Korff predicted a "likelihood of an ongoing risk of adverse punitive behaviors" toward the Child by Father. *Id.* (citation omitted). Dr. von Korff believed that Father's treatment with his therapist was insufficient and could contribute to a false sense of capacity. *Id.* (citation omitted); *see also* N.T., 7/14/25, at 57-59. The orphans' court again agreed with Dr. von Korff's conclusion. O.C.O. at 6.

As for Father's therapist, the orphans' court stated that although it appreciated the therapist's work, it did not accept his conclusions regarding Father's progress. *Id.* at 7. The court specifically rejected the therapist's conclusions that Father had "accomplished" his anger management goals and had made progress regarding his parenting skills and use of excessive physical discipline. *Id.* The court noted that the therapist only met with Father for five one-hour counseling sessions from May to November 2024 and did not know the specifics of what led Father to need counseling. *Id.*; *see also* N.T., 8/7/25, at 89, 91, 93-94. Further, Father's therapist did not provide an opinion on whether Father could safely parent a child in his care. O.C.O. at 8; *see also* N.T., 8/7/25, at 97-99. The court found that if the Child was in the parents' care, it was very likely he would face the same type of abuse that the parents previously inflicted. O.C.O. at 8.

Additionally, at one point during the dependency proceedings, Father and Mother had progressed to unsupervised visits with the Child. However, during an extended visit, the Child sustained an injury to his finger which Father and Mother did not report, and they could not explain its origin. ***Id.***; N.T., 8/7/25, at 15-18. Father and Mother tried to assert that the injury happened at Maternal Grandparents, which the court found was impossible. O.C.O. at 8; N.T., 8/7/25, at 15-18. The court noted that this raised serious concerns about the parents' continued attempts to conceal injuries to the Child. O.C.O. at 8. This injury resulted in a general protective services report on Father, which the Agency validated for lack of supervision. ***See*** N.T., 8/7/25, at 14, 19-20. Additionally, the Agency caseworker testified that she was concerned about statements that Father continued to make about his opinion on discipline, as recently as a month before the termination hearing. ***See id.*** at 38-39.

Moreover, although Father points to the Parents as Teachers employee's testimony that she no longer believed his view on discipline was a barrier, Father fails to acknowledge that her testimony was framed as a conditional statement. Specifically, she testified that ***if*** Father could put into place what she had seen during visits, she "would feel confident that" the Child "would be safe" in Father's care. ***Id.*** at 120. However, she admitted that she did not know if Father could put into place what she had seen at visits. ***See id.*** at 121-22. Thus, this testimony is not determinative.

The record evidence supports the finding that the conditions which led to removal were not remedied and reunification between Father and the Child was not imminent at the time of the termination hearing, almost three years after the Child was removed. *See M.E.*, 283 A.3d at 832. We reiterate that our role as an error-correcting appellate court does not include searching the record for contrary conclusions or substituting our judgment for that of the orphans' court. *See S.K.L.R.*, 256 A.3d at 1124. When the record supports the orphans' court's decision, we must affirm even though evidence exists that would also support a contrary determination. *See P.Z.*, 113 A.3d at 849; *see also T.S.M.*, 71 A.3d at 267. The orphans' court's purview as factfinder was to weigh the evidence and make credibility determinations. That it did so in the Agency's favor, rather than Father's, does not constitute reversible error. We discern no error of law or abuse of discretion with the orphans' court's analysis of the first two elements of Section 2511(a)(8).

Regarding the third element of Section 2511(a)(8), the orphans' court determined that termination of parental rights was in the Child's best interest. O.C.O. at 22.

The record supports the orphans' court's conclusion. Dr. von Korff testified that the Child's engagement with Father and Mother was like how a child would engage with a stranger. *See* N.T., 7/14/25, at 47. Conversely, the Child was "thoroughly engaged" with Maternal Grandparents. *Id.* at 48. Dr. von Korff recommended that the Child remain with Maternal Grandparents.

*Id.* at 50, 59, 78. He also opined that there was no evidence that termination would have a negative impact on the Child. *Id.* at 59, 78. However, there was evidence that severing the Child's bond with Maternal Grandparents would have a negative impact on him. *See id.* at 60, 78.

The Agency case aide who supervised visits between the Child and his parents noted that the Child did not look to Father for comfort. *See id.* at 98. During visits, Father was frequently on his phone, would lay with his eyes closed, and kept looking at the clock. *See id.* at 102. The Agency caseworker testified that, for the visits she supervised, there was minimal engagement from parents, and she never saw the Child look to Father for comfort. *See* N.T., 8/7/25, at 26, 30. The caseworker did not believe termination would have a negative effect on the Child, who had a parental bond with Maternal Grandparents. *Id.* at 32, 55.

Maternal Grandmother testified that she and Maternal Grandfather were willing to adopt the Child. *See* N.T., 7/14/25, at 124, 149. She felt that the Child had a very close bond with Maternal Grandparents and likely considered them his parents. *Id.* at 150. She believed termination and adoption were in the Child's best interest. *Id.* at 152.

The Child's CASA recommended that the court grant termination and allow the Child to be adopted. *See id.* at 173. She testified that removing the Child from Maternal Grandparents would be devastating for him. *See id.* at 174.

Thus, the record supports the orphans' court's decision that termination best served the Child's needs and welfare. Father's challenge to Section 2511(a)(8) merits no relief.

We turn next to Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child (citation omitted)).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" *K.T.*, 296 A.3d at 1105. It is well-established that the child's

"emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that terminating Father's parental rights best served the Child's needs and welfare. The court explained:

> The Child is now 3 years old. [. . .] He has been in the [] kinship care of his Maternal Grandparents [] for years. He recognizes Maternal Grandparents as parents and is very strongly and productively bonded with them. He turns to them for comfort and support. They have provided a loving and stable home for him and will adopt him if that is an option. The Child has a very limited bond with Parents. He recognizes them but just as someone that he knows and has contact with. He does not have a parental bond with them or recognize them as parents. If the limited bond that he has with Parents is terminated / severed, it will not cause the Child any harm. Termination will allow the Child to be adopted, the loving and caring relationship with Maternal Grandparents to continue and for him to have permanency and stability. If we deny the Petition to Terminate Parental Rights, it is very unlikely that Parents will make any meaningful and productive change and the Child will remain in placement and instability for years. Therefore, we find, by clear and convincing evidence, that termination of parental rights and adoption by Maternal Grandparents will best fulfill the Child's physical, emotional needs and welfare.

O.C.O. at 23 (the Child's and Maternal Grandparents' names omitted).

On appeal, Father argues that the Parents as Teachers employee's testimony established a "clear emotional bond" between Father and the Child. Father's Brief at 32. According to Father, the Child "consistently responded positively to Father, participated in meaningful interaction, and was the focus of structured parental teaching and guidance." *Id.* at 33. Father claims that the "only reasonable conclusion from this evidence" is that the Child derives emotional and developmental benefit from his relationship with Father and that severing that relationship would be detrimental. *Id.*

Father again fails to appreciate our standard of review, and his argument is belied by the record. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M., supra*.

Here, as noted above, the record supports the orphans' court's findings. Multiple witnesses testified in favor of termination, including Dr. von Korff, Maternal Grandmother, the CASA, and the Agency caseworker. Dr. von Korff testified that remaining with Maternal Grandparents was in the Child's best interest, and termination would have no negative impact on him. *See* N.T., 7/14/25, at 78. Maternal Grandmother testified that termination was in the Child's best interest, and he was closely bonded with Maternal Grandparents. *See id.* at 150, 152. Likewise, the CASA recommended that the court grant termination, and that the Child be adopted by Maternal Grandparents because removing him from them would be devastating. *See id.* at 173-74. The

Agency caseworker also believed that termination would not have a negative impact on the Child, who had a strong bond with Maternal Grandparents. ***See*** N.T., 8/7/25, at 32, 55. The Agency case aide and caseworker testified that the Child did not look to Father for comfort. ***See*** N.T., 7/14/25, at 98; N.T., 8/7/25, at 30. Father was minimally engaged during visits, and the Child mainly played independently. ***See*** N.T., 7/14/25, at 102; N.T., 8/7/25, at 26. Father's challenge to Section 2511(b) merits no relief.

In sum, we hold that the orphans' court did not commit an error of law or abuse its discretion in terminating Father's parental rights pursuant to Section 2511 of the Adoption Act.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/11/2026